IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JUSTIN SAMUELS,

      Plaintiff,

    v.

BRYN MAWR COLLEGE and
UNITED STATES DEPARTMENT OF
EDUCATION,

      Defendants.

Case No. 23-cv-3743

## DEFENDANT UNITED STATES DEPARTMENT OF EDUCATION'S <u>MOTION TO DISMISS</u>

Defendant United States Department of Education moves to dismiss Plaintiff

Justin Samuels's complaint under Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6). Dismissal is warranted for the reasons explained in the accompanying

memorandum of law.

Dated:  January 12, 2024

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*/s/ Gregory B. in den Berken*
GREGORY B. IN DEN BERKEN
Assistant United States Attorney
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Phone:   (215) 861-8505
Email:   gregory.indenberken@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JUSTIN SAMUELS,

       Plaintiff,

    v.

BRYN MAWR COLLEGE and
UNITED STATES DEPARTMENT OF
EDUCATION,

       Defendants.

Case No. 23-cv-3743

**DEFENDANT UNITED STATES DEPARTMENT OF EDUCATION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................1

ARGUMENT ..............................................................................................1

I.  Dismissal Is Required Because The Court Lacks Subject-Matter Jurisdiction.........................................................................................3

    A.  Samuels lacks standing because he has not alleged an actual imminent injury. .................................................................3

    B.  Sovereign immunity bars Samuels's claim against the Department. .......................................................................7

II.  Alternatively, The Court Should Dismiss Samuels's Complaint For Failure To State A Claim.....................................................12

    A.  Samuels has no private right of action against the Department..........12

    B.  Samuels's complaint does not state a claim upon which relief can be granted.......................................................17

CONCLUSION.......................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abdul-Akbar v. McKelvie*,
239 F.3d 307 (3d Cir. 2001) ..............................................................................12

*Am. Disabled for Attendant Programs Today v. U.S. Dep't of Hous. & Urb. Dev.*,
170 F.3d 381 (3d Cir. 1999) ....................................................................... 14, 16

*Anderson v. Cardona*,
No. 20-cv-1824, 2021 WL 6423804 (C.D. Cal. Nov. 4, 2021),
*R. & R. adopted*, 2022 WL 580734 (C.D. Cal. Feb. 25, 2022)............................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................19

*Associated Builders & Contractors W. Pennsylvania v. Cmty. Coll. of Allegheny Cnty.*,
81 F.4th 279 (3d Cir. 2023) ..................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .........................................................................................1, 2

*Bennett v. Spear*,
520 U.S. 154 (1997) ...........................................................................................15

*Bivens v. Six Unknown Federal Narcotics Agents*,
403 U.S. 388 (1971) ...........................................................................................17

*Brown v. Philip Morris Inc.*,
250 F.3d 789 (3d Cir. 2001) ..............................................................................12

*Buck v. Hampton Twp. Sch. Dist.*,
452 F.3d 256 (3d Cir. 2006) ........................................................................ 6, 18

*Burton v. Wilmington Parking Auth.*,
365 U.S. 715 (1961) ...........................................................................................19

**Page(s)**

*Cannon v. University of Chicago*,
   441 U.S. 677 (1979) ................................................................ 13, 15

*Carney v. Adams*,
   592 U.S. 53 (2020) ....................................................................5

*Castro v. U.S. Dep't of Homeland Sec.*,
   835 F.3d 422 (3d Cir. 2016) .......................................................8

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ...................................................................4

*Const. Party of Penn. v. Aichele*,
   757 F.3d 347 (3d Cir. 2014) .......................................................2

*Earle Asphalt Co. v. Cnty. of Camden*,
   2023 WL 8711815 (3d Cir. Dec. 18, 2023)...............................6, 7

*Ellison v. Am. Bd. of Orthopaedic Surgery*,
   11 F.4th 200 (3d Cir. 2021) .....................................................4, 5

*Farmer v. Ramsay*,
   43 F. App'x 547 (4th Cir. 2002)..................................................6

*FDIC v. Meyer*,
   510 U.S. 471 (1994) ............................................................. 7, 17

*Finkelman v. Nat'l Football League*,
   810 F.3d 187 (3d Cir. 2016) .......................................................4

*Freeman v. Cavazos*,
   923 F.2d 1434 (11th Cir. 1991)...................................................9

*Gentile v. SEC*,
   974 F.3d 311 (3d Cir. 2020) ................................................ 10, 11

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ...................................................... 10, 15, 16

*Isaacs v. U.S. Dep't of Educ.*,
   No. 17-cv-11221, 2018 WL 1257760 (D. Mass. Mar. 12, 2018)........11

**Page(s)**

*James v. U.S. Dep't of Educ.'s Off. for C.R.*,
No. 22-cv-5738, 2022 WL 6807471 (S.D.N.Y. Oct. 11, 2022) ............................11

*Jersey Heights Neighborhood Ass'n v. Glendening*,
174 F.3d 180 (4th Cir. 1999) ........................................................... 14, 16

*Lane v. Pena*,
518 U.S. 187 (1996) .............................................................................8

*Lugar v. Edmondson Oil Co.*,
457 U.S. 922 (1982) ...........................................................................19

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ..........................................................................3, 4

*Marlow v. U.S. Dep't of Educ.*,
820 F.2d 581 (2d Cir. 1987) .................................................................11

*Merchant v. U.S. Dep't of Educ.*,
No. 21-cv-195, 2021 WL 3738835 (M.D. Fla. Aug. 24, 2021),
*aff'd as modified*, 2022 WL 15561847 (11th Cir. Oct. 28, 2022) ......................11

*NAACP v. Med. Ctr., Inc.*,
599 F.2d 1247 (3d Cir. 1979) ...............................................................14

*Nat'l Coal. Against Violent Athletes v. Dep't of Educ.*,
No. 17-cv-12043, 2020 WL 13876913 (D. Mass. Dec. 3, 2020) ......................14

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*,
383 F.3d 1047 (D.C. Cir. 2004) .............................................................16

*Orff v. United States*,
545 U.S. 596 (2005) .............................................................................8

*Pudlin v. Off. for (Not of) C.R. of the U.S. Dep't of Educ.*,
186 F. Supp. 3d 288 (S.D.N.Y. 2016) ......................................................11

*Raines v. Byrd*,
521 U.S. 811 (1997) .............................................................................3

iv

**Page(s)**

*Samuels v. Barnard College*,
  No. 23-cv-6181, 2023 WL 6541052 (S.D.N.Y. Oct. 6, 2023)...............................7

*Schmidt v. Skolas*,
  770 F.3d 241 (3d Cir. 2014) ...............................................................................18

*Shea v. Kerry*,
  796 F.3d 42 (D.C. Cir. 2015).................................................................................5

*Sherman v. Black*,
  315 F. App'x. 347 (2d Cir. 2009)........................................................................11

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ..........................................................................................3, 4

*Steimel v. Sec'y of U.S. Dep't of Educ.*,
  No. 89-cv-1853, 1989 WL 135184 (E.D.N.Y. Oct. 31, 1989)............................11

*the Blind v. Regan*,
  709 F.2d 1521 (D.C. Cir. 1983)...........................................................................14

*Turner v. Sec'y of HUD*,
  449 F.3d 536 (3d Cir. 2006) ...............................................................................16

*United States v. Bein*,
  214 F.3d 408 (3d Cir. 2000) .................................................................................7

*United States v. Hays*,
  515 U.S. 737 (1995) .............................................................................................4

*United States v. Mitchell*,
  463 U.S. 206 (1983) .............................................................................................7

*United States*,
  37 F.4th 84 (3d Cir. 2022) ..................................................................................12

*Vogt v. Wetzel*,
  8 F.4th 182 (3d Cir. 2021) ....................................................................................8

*Washington v. Davis*,
  426 U.S. 229 (1976) ...........................................................................................18

v

**Page(s)**

*West v. Spellings*,
  480 F. Supp. 2d 213 (D.D.C. 2007) ................................................................11

*White v. Voluntary Interdistrict Choice Corp.*,
  864 F.3d 932 (8th Cir. 2017) .......................................................................5

*Women's Equity Action League v. Cavazos*,
  906 F.2d 742 (D.C. Cir. 1990) .....................................................................14

*Wooden v. Board of Regents of Univ. Sys. of Georgia*,
  247 F.3d 1262 (11th Cir. 2001) ....................................................................7

## STATUTES

5 U.S.C. § 701 ......................................................................................10

5 U.S.C. § 701(a)(2) ........................................................................... 10, 15

5 U.S.C. § 702 ................................................................................... 9, 15

5 U.S.C. § 704 ......................................................................................15

20 U.S.C. § 1234g(b) ...............................................................................9

20 U.S.C. § 1681(a)(1) .............................................................................17

20 U.S.C. § 1681(a)(2) .............................................................................18

20 U.S.C. § 1682 ....................................................................................9

20 U.S.C. § 1683 .............................................................................. 9, 10, 13

42 U.S.C. § 2000d ...................................................................................8

vi

## INTRODUCTION

Plaintiff Justin Samuels thinks private undergraduate institutions with women-only admissions policies are illegal. And he thinks that the U.S. Department of Education is required to use its enforcement authority to put an end to these institutions' admissions policies. Samuels thus filed this suit against the Department and Bryn Mawr College, asserting a claim under Title IX of the Education Amendments of 1972 and the Equal Protection Clause. *See* ECF No. 2 at 2-4.[1] He appears to contend that Bryn Mawr College's single-sex admissions policy and the Department's (non)enforcement of Title IX with respect to that policy violate Title IX and his equal-protection rights. As explained below, Samuels is wrong and his complaint must be dismissed.

## ARGUMENT[2]

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl.*

---

[1] Samuels's complaint (ECF No. 2) includes several different documents and totals 17 pages. Because not all pages are numbered, the Department's pincites for ECF No. 2 refer to the page numbers in the CM/ECF document header.

[2] The Department notes that this case is one of many pro se suits filed by Samuels in recent months without payment of filing fees. *See Samuels v. N.Y.C.*, No. 23-cv-10045 (S.D.N.Y. filed Nov. 12, 2023) (suit against New York City's Women Film Fund); *Samuels v. YCWA Brooklyn*, No. 23-cv-10046 (S.D.N.Y. filed Nov. 12, 2023) (suit challenging community organization's social-services programs for women); *Samuels v. City of Los Angeles*, No. 23-cv-8266 (C.D. Cal. filed Oct. 1, 2023) (suit challenging alleged racial discrepancies in Los Angeles

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim to relief must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Dismissal is proper when the facts alleged fail "to raise a right to relief above the speculative level." *Id.* If a defendant asserts that subject-matter jurisdiction is lacking under Rule 12(b)(1) based on the face of the complaint—as the Department asserts here—then the court will apply "the same standard of review [that] it would use in considering a motion to dismiss under Rule 12(b)(6)." *Const. Party of Penn. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

Samuels's complaint should be dismissed under Rule 12(b)(1) because it fails to establish subject-matter jurisdiction. He does not plausibly allege that he has suffered any injury in fact, which means that he lacks standing. Nor does Samuels identify an applicable waiver of the Department's sovereign immunity. And dismissal would be required under Rule 12(b)(6) even if Samuels could

---

neighborhoods); *Samuels v. N.Y. Dep't of Labor*, No. 23-cv-8004 (S.D.N.Y. filed Sept. 11, 2023) (suit challenging state agency's decision to rescind unemployment benefits); *Samuels v. SBA*, No. 23-cv-8000 (S.D.N.Y. filed Sept. 10, 2023) (suit challenging SBA's Women-Owned Small Business Federal Contract Program); *Samuels v. Barnard College*, No. 23-cv-6181 (S.D.N.Y. filed July 17, 2023) (similar suit against single-sex private undergraduate institution); *see also Samuels v. State of Cal.*, No. 23-cv-8978 (C.D. Cal. filed Oct. 21, 2023) (suit challenging California Commission on the Status of Women and Girls) (dismissed sua sponte Dec. 7, 2023).

2

overcome these hurdles because his complaint also fails to state a claim. For one thing, he does not have a private right of action against the Department. And even putting aside that missing requirement, Title IX explicitly exempts the admissions practices of private undergraduate institutions like Bryn Mawr College. The College's admissions policy thus cannot plausibly support a Title IX claim against anyone.

## I.    Dismissal Is Required Because The Court Lacks Subject-Matter Jurisdiction

### A.    Samuels lacks standing because he has not alleged an actual imminent injury.

Article III, Section 2 of the Constitution limits federal-court jurisdiction to "Cases" and "Controversies." *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." (citation omitted)). Standing to sue is a doctrine derived from this limitation on judicial power. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To possess standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). These fundamental requirements "appl[y]

3

with as much force in the equal protection context as in any other." *United States v. Hays*, 515 U.S. 737, 743 (1995).

Samuels bears the burden of establishing standing, which—at this stage of the case—requires that he clearly allege facts that plausibly suggest each element is satisfied. *See, e.g.*, *Spokeo*, 578 U.S. at 338 (plaintiff must "clearly allege facts demonstrating each element" (cleaned up)); *Hays*, 515 U.S. at 743; *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016). And all elements of standing must exist at the time the complaint is filed. *Lujan*, 504 U.S. at 569 n.4.

To demonstrate an injury in fact, Samuels must show that he "suffered an invasion of a legally protected interest" that is both "concrete and particularized" and also "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (cleaned up). A concrete injury is real rather than abstract, and a particularized injury affects the plaintiff in a personal and individual way. *Id.* at 339-40. If the asserted injury is a *future* injury, that injury "must be *certainly impending* to constitute injury in fact"—"allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original) (cleaned up). The injury-in-fact requirement serves to distinguish "a person with a direct stake in the outcome of a litigation — even though small — from a person with a mere interest in the problem." *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 205 (3d Cir. 2021) (cleaned up).

Samuels has not shown any injury in fact because he has not plausibly alleged that he has been or will be subjected to Bryn Mawr College's allegedly discriminatory admissions policy. His complaint describes his injury as follows: "I was told I could not proceed with admissions because I'm w msn evo [sic] wants to be a man. Imagine the uproar if a woman who wanted to be a woman." ECF No. 2 at 5. But Samuels nowhere asserts that he actually applied to Bryn Mawr College or plans to do so in the future. That means his injury is wholly speculative.

To be sure, Samuels's failure to allege that he applied to Bryn Mawr College would not preclude standing if applying would be futile. *See Ellison*, 11 F.4th at 205 (citing *Carney v. Adams*, 592 U.S. 53, 66 (2020)). But Samuels at the very least has to establish that he intends to and is "able and ready" to apply. *Id.* at 206 (quoting *Carney*, 592 U.S. at 60).[3] That means he had to allege that he "took some actual steps that demonstrate a real interest in" pursuing admission to Bryn Mawr College. *Id.* at 207 (citing cases).

---

[3]  *See also, e.g.*, *E.L. by White v. Voluntary Interdistrict Choice Corp.*, 864 F.3d 932, 935 (8th Cir. 2017) ("Under *Gratz* [*v. Bollinger*, 593 U.S. 244, 260-61 (2003)], individuals must show that they intend to apply to a school in order to have standing to challenge a discriminatory admissions policy."); *Shea v. Kerry*, 796 F.3d 42, 50-51 (D.C. Cir. 2015) (plaintiffs who alleged that they "possessed an intent to apply" and "would have applied" had standing to challenge job-application policy).

5

Samuels has not alleged that. Indeed, his complaint is devoid of any allegation that plausibly supports the notion that he intends to and is able and ready to apply. And an email chain that Samuels included with his complaint affirmatively suggests that he lacks any serious intention of applying.[4] In that chain, Samuels writes Bryn Mawr College's Office of Admissions to ask about their admissions policy and explains that he was merely "*thinking about* applying." ECF No. 2 at 17 (emphasis added). In a subsequent email to a third party, Samuels further appears to disclaim any interest in pursuing admission. *See id.* ("Here is an email from Bryn Mawr College saying I would have to live as a woman *if I wanted to be admitted*" (emphasis added)). These whimsical emails suggest that Samuels lacks any serious intention of applying.

Samuels has thus failed to plead any "concrete and particularized" and "actual or imminent" injury, meaning he lacks standing. *See, e.g., Earle Asphalt Co. v. Cnty. of Camden*, 2023 WL 8711815, at *1 (3d Cir. Dec. 18, 2023) (explaining that "[w]hether a party is 'able and ready' is a legal conclusion that depends on the facts" and that the failure to "plead a settled intent" precludes standing); *Farmer v. Ramsay*, 43 F. App'x 547, 554 (4th Cir. 2002) (plaintiff who

---

[4]    The documents Samuels "attached to or submitted" with his complaint are properly considered in deciding a motion to dismiss. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

6

"has not expressed an unequivocal intention" to apply to medical school "failed to show 'imminent injury'"); *Wooden v. Board of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1284–85 (11th Cir. 2001) (admitted student challenging freshman-admissions policy lacked standing to obtain prospective relief because there was no indication that he actually intended to re-apply for admission); *see also Associated Builders & Contractors W. Pennsylvania v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 290 (3d Cir. 2023) (finding no standing for lack of imminence).[5]

### B. Sovereign immunity bars Samuels's claim against the Department.

Sovereign immunity also precludes Samuels's claim against the Department. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Sovereign immunity "is jurisdictional in nature," *id.*—so consent to the suit (a waiver of sovereign immunity) "is a prerequisite for jurisdiction," *United States v. Mitchell* 463 U.S. 206, 212 (1983); *see also United States v. Bein*, 214 F.3d 408, 412 (3d

---

[5] Samuels's lack of standing is further supported by a recent decision in a similar suit that he brought against another private undergraduate institution. *See Samuels v. Barnard College*, No. 23-cv-6181, 2023 WL 6541052 (S.D.N.Y. Oct. 6, 2023). There, the court determined that Samuels lacked standing because "he allege[d] no facts showing that he himself will be or has been injured by" the admissions policies at issue there: "[H]e d[id] not allege that he will apply or has ever applied for admission" or "that his application will likely be or has already been denied because of those policies." *Id.* at *4. And the court observed that Samuels's allegation that he had earned a master's degree from the institution further undermined the notion that he was likely to be injured. *See id.* at *4 n.2.

Cir. 2000) ("federal courts do not have jurisdiction over suits against the United States unless Congress, via a statute, expressly and unequivocally waives the United States' immunity to suit"). Any waiver of sovereign immunity "must be unequivocally expressed in statutory text" and "will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996). And such waivers are "strictly construed in favor of the sovereign." *Orff v. United States*, 545 U.S. 596, 602 (2005).

As the party asserting jurisdiction, Samuels bears the burden of proving that the United States has unequivocally waived sovereign immunity. *See, e.g., Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 429 (3d Cir. 2016). In his complaint, Samuels invokes "Title IX," ECF No. 2 at 4[6]—but Title IX contains no waiver of sovereign immunity that applies here. And although the Administrative Procedure Act ("APA") does waive sovereign immunity for certain types of Title IX claims, the APA's waiver is inapplicable here.[7]

---

[6] Samuels also passingly mentions Title VI of the Civil Rights Act of 1964 in a cover letter attached to his complaint. *See* ECF No. 2 at 15. But Title VI covers discrimination "on the ground of race, color, or national origin," 42 U.S.C. § 2000d, while Samuels alleges "discrimination based on sexual orientation and gender identity," ECF No. 2 at 4. So Title VI has no bearing here.

[7] Samuels has not invoked the APA, but the Department addresses it here for the Court's benefit given Samuels's pro se status. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (noting that pro se filings are construed "liberally," which involves "apply[ing] the relevant legal principle even when the complaint has failed to name it").

*First*, Title IX contains no waiver of sovereign immunity that applies here. Although Title IX contains a provision that authorizes judicial review (20 U.S.C. § 1683), such review is limited to agency action undertaken pursuant to 20 U.S.C. § 1682, which is the provision under which the Department *terminates funding* under Title IX. For Department actions under § 1682, § 1683 authorizes "such judicial review as may otherwise be provided by law for similar action taken by [the Department] on other grounds." This "similar action" language incorporates the general provision for judicial review of funding terminations in 20 U.S.C. § 1234g(b), which provides for review only in "the United States Court of Appeals for the circuit in which that recipient is located" after completion of an administrative process. *See Freeman v. Cavazos*, 923 F.2d 1434, 1440 (11th Cir. 1991) (holding that the "applicable judicial review provision" for "similar action" under Title VI of the Civil Rights Act of 1964 is 20 U.S.C. § 1234g). And while § 1683 also directs that certain agency action is reviewable under the APA, that language applies only to Title IX funding terminations "not otherwise subject to judicial review."

Here, Samuels does not allege that he seeks review of any agency action taken under § 1682. So his claim cannot be squeezed into § 1683.

*Second*, the APA's waiver of sovereign immunity in 5 U.S.C. § 702 is inapplicable here because Samuels challenges agency action that is committed to

9

the Department's discretion by law.[8] 5 U.S.C. § 701(a)(2) specifies that the APA—

including its sovereign-immunity waiver—is inapplicable to "agency action [that]

is committed to agency discretion by law." An agency's decision not to enforce "is

a decision generally committed to an agency's absolute discretion" and is thus

covered by § 701(a)(2). *Heckler v. Chaney*, 470 U.S. 821, 830-32 (1985); *see also*

*Gentile v. SEC*, 974 F.3d 311, 318-19 (3d Cir. 2020) (observing that "decisions to

refrain from enforcement or investigative activity" are a classic example of

"agency decisions governed by a tradition of nonreviewability" (cleaned up)).

Samuels's claim against the Department challenges its alleged non-

enforcement of Title IX with respect to Bryn Mawr College.[9] Indeed, Samuels

explicitly seeks to compel the Department to initiate Title IX enforcement against

---

[8]    20 U.S.C. § 1683 contains some relevant language on this point, but that language is inapplicable here too. Section 1683 directs that agency actions "terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with" Title IX are reviewable under the APA if they are "not otherwise subject to judicial review," and that such actions "shall not be deemed committed to unreviewable agency discretion" under 5 U.S.C. § 701. Samuels's suit does not challenge a Department decision to terminate funding under Title IX, so this language does not apply here.

[9]    *See, e.g.*, ECF No. 2 at 5 ("The United States Department of Education must stop sexual orientation and gender identity discrimination across the board."); *id.* at 16 (Samuels explaining that his suit is directed at how the Department is "enforcing anti-discrimination laws" with respect to Bryn Mawr College); ECF No. 29 at 1 (Samuels's "Motion for Judgment" arguing that "[t]he Department has failed to enforce Title IX" with regard to Bryn Mawr College); *id.* at 2 (arguing that "[t]he Department has a duty to enforce Title IX, and its failure to do so is a violation of Plaintiff's right to equal protection under the law").

Bryn Mawr College:  In his most recent filing, he requests "[a] permanent injunction prohibiting the Department from allowing Bryn Mawr College to continue to discriminate." ECF No. 29 at 2. It is thus clear that Samuels challenges the Department's discretionary enforcement decision under Title IX. So § 701(a)(2) applies and precludes judicial review under the APA. *See, e.g.*, *Marlow v. U.S. Dep't of Educ.*, 820 F.2d 581, 582-83 (2d Cir. 1987) (holding that § 701(a)(2) precluded judicial review of the Department's decision not to act on a complaint against New York City Board of Examiners).[10]

Samuels thus lacks a waiver of sovereign immunity for his claim against the Department. That means there is no subject-matter jurisdiction and dismissal is required. *See Gentile*, 974 F.3d at 319-20

---

[10]  *See also, e.g.*, *Sherman v. Black*, 315 F. App'x. 347, 348 (2d Cir. 2009) (observing that the Department's "decision not to commence enforcement proceedings is discretionary," precluding review under APA); *James v. U.S. Dep't of Educ.'s Off. for C.R.*, No. 22-cv-5738, 2022 WL 6807471, at *2 (S.D.N.Y. Oct. 11, 2022) (same); *Anderson v. Cardona*, No. 20-cv-1824, 2021 WL 6423804, at *4 (C.D. Cal. Nov. 4, 2021), *R. & R. adopted*, 2022 WL 580734 (C.D. Cal. Feb. 25, 2022) (same); *Merchant v. U.S. Dep't of Educ.*, No. 21-cv-195, 2021 WL 3738835, at *4 (M.D. Fla. Aug. 24, 2021) ("The Department's investigation of complaints and exercise of its enforcement authority are clearly committed to agency discretion by law."); *aff'd as modified*, 2022 WL 15561847 (11th Cir. Oct. 28, 2022); *Isaacs v. U.S. Dep't of Educ.*, No. 17-cv-11221, 2018 WL 1257760, at *5 (D. Mass. Mar. 12, 2018) (same); *Pudlin v. Off. for (Not of) C.R. of the U.S. Dep't of Educ.*, 186 F. Supp. 3d 288, 293 (S.D.N.Y. 2016) (same); *West v. Spellings*, 480 F. Supp. 2d 213, 218 (D.D.C. 2007) (same); *Steimel v. Sec'y of U.S. Dep't of Educ.*, No. 89-cv-1853, 1989 WL 135184, at *1 (E.D.N.Y. Oct. 31, 1989) (same).

## II.    Alternatively, The Court Should Dismiss Samuels's Complaint For Failure To State A Claim

Alternatively, the Court should dismiss Samuels's complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) because he does not have a private right of action against the Department and his claim fails as a matter of law in any event.

### A.    Samuels has no private right of action against the Department.

"To unlock the courthouse door and sue the federal government, a plaintiff . . . must have a cause of action so he can invoke the power of the courts to remedy his injury." *Doe 1 v. United States*, 37 F.4th 84, 86 (3d Cir. 2022) (cleaned up). Here, Samuels invokes "[t]he Equal Protection Clause" and "Title IX." ECF No. 2 at 3-4.[11] But neither Title IX nor the APA support a private right of action against the Department for the claim that Samuels purports to bring. And there is no reason

---

[11]    Samuels's complaint seems to invoke the Equal Protection Clause of the Fourteenth Amendment, *see* ECF No. 2 at 7-14, but the Fourteenth Amendment "only applies to actions of the states and not to the federal government," *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001). Given Samuels's pro se status, the Department will assume that he seeks to invoke the equal-protection component of the Fifth Amendment, which applies to federal agencies. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 316-17 (3d Cir. 2001) (explaining that the Supreme Court "has construed the Fifth Amendment to contain an equal protection guarantee" and that "Fifth Amendment equal protection claims are examined under the same principles that apply to such claims under the Fourteenth Amendment" (cleaned up)).

to infer that Samuels has a free-standing private right of action against the Department under the Equal Protection Clause.

*First*, Title IX does not provide a private right of action against the Department for Samuels's claim here. As noted above, 20 U.S.C § 1683 authorizes only judicial review by affected individuals seeking to challenge agency decisions to *terminate funding* under Title IX. But Samuels's claim against the Department is not predicated on a decision to terminate funding, so it cannot be squeezed into § 1683.

Nor does the implied private right of action recognized in *Cannon v. University of Chicago*, 441 U.S. 677 (1979), apply to Samuels's claim against the Department. *Cannon* held that Title IX provides an implied private right of action against funding recipients—but that holding does not extend to suits against the federal government for failure to enforce Title IX. As the Court recognized, Title VI—on which Title IX was modeled—represents "a compromise aimed at protecting individual rights *without* subjecting the Government to suits." *Id.* at 715 (emphasis added) & n.51 (opining that "[a]lthough willing to extend private rights against discriminatory recipients, the Government may not have been anxious to encourage suits against itself"); *see also id.* at 703 ("Congress intended to create Title IX remedies comparable to those available under Title VI."). The Court specifically considered whether Title IX was intended to permit suits against the

13

government to terminate a recipient's funding and concluded that the legislative history indicates that it was not. *Id.* at 711, 715 n.51; *see also id.* at 706 n.41 (observing that such suits would be "far more disruptive of [the government's] efforts efficiently to allocate its enforcement resources under Title IX than a private suit against the recipient of federal aid could ever be").

Myriad courts have relied on *Cannon*'s analysis to conclude that suits against funding recipients are adequate to redress injuries arising from violations of Titles VI and IX—and that suits against the funding agency are thus precluded. *See, e.g.*, *NAACP v. Med. Ctr., Inc.*, 599 F.2d 1247, 1254 n.27 (3d Cir. 1979) (observing that plaintiffs "may not otherwise sue an agency [under Title VI] to compel termination of funds"); *see also Am. Disabled for Attendant Programs Today v. U.S. Dep't of Hous. & Urb. Dev.*, 170 F.3d 381, 390 (3d Cir. 1999) (similar).[12] Courts have reached that conclusion even when the plaintiff alleged that the agency has abdicated its enforcement duty. *See Women's Equity Action*

---

[12]   *See also Women's Equity Action League v. Cavazos*, 906 F.2d 742, 747-51 (D.C. Cir. 1990) (Ginsburg, J.); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 191-92 (4th Cir. 1999) ("[W]e think that *Cannon*'s direct remedy against funding recipients is not only adequate, but, as the Supreme Court recognized, is preferable to a direct suit against the agency itself." (cleaned up)); *Council of & for the Blind v. Regan*, 709 F.2d 1521, 1528-34 (D.C. Cir. 1983) (en banc); *Nat'l Coal. Against Violent Athletes v. Dep't of Educ.*, No. 17-cv-12043, 2020 WL 13876913, at *8 (D. Mass. Dec. 3, 2020) (dismissing Title IX claim against Department because Title IX does not provide a "private right of action against federal agencies").

*League*, 906 F.2d at 747 (finding no authority for "the continuing, across-the-board federal court superintendence of executive enforcement" that plaintiffs sought notwithstanding abdication allegations). Samuels thus lacks a private right of action against the Department under Title IX.

*Second*, the APA does not provide Samuels with a private right of action either. To be sure, the APA authorizes claims that challenge (1) "final agency action" (2) "for which there is no other adequate remedy in a court," 5 U.S.C. § 704, and which (3) is not "committed to agency discretion by law," *id.* § 701(a)(2); *see also id.* § 702; *Heckler*, 470 U.S. at 828. But Samuels's claim against the Department does not satisfy any of these three requirements.

*No final agency action.* Samuels fails to identify final agency action by the Department that is subject to review under the APA. To qualify as "final," agency action must impose an obligation, deny a legal right, or fix some relationship pursuant to the consummation of an administrative process. *Bennett v. Spear*, 520 U.S. 154, 156 (1997). Samuels has not plausibly alleged any final agency action subject to APA review here. *See* ECF No. 2.

*Adequate remedy.* Samuels has an adequate alternative remedy here: Proceeding directly against the relevant funding recipient, namely Bryn Mawr College. *See Cannon*, 441 U.S. at 705-06. That direct remedy "is not only adequate, but, as the Supreme Court recognized, is preferable to a direct suit

15

against" the Department. *Jersey Heights*, 174 F.3d at 191-92 (cleaned up). Samuels's ability to proceed against Bryn Mawr College provides an adequate remedy under § 704 and thus precludes an APA claim against the Department. *See, e.g.*, *Turner v. Sec'y of HUD*, 449 F.3d 536, 539-41 (3d Cir. 2006) (private right of action against landlord under Fair Housing Act precluded APA challenge to HUD's processing of plaintiff's discrimination complaint); *see also Am. Disabled*, 170 F.3d at 389-90.

*Unreviewable discretion committed to the agency by law.* As explained above (at 10-11), Samuels's claim against the Department seeks judicial review of its alleged non-enforcement of Title IX with respect to Bryn Mawr College's admissions policy. But "agency refusals to institute investigative or enforcement proceedings" generally fall within § 701(a)(2) and are thus unreviewable under the APA. *Heckler*, 470 U.S. at 838; *see also Am. Disabled*, 170 F.3d at 384 (interpreting *Heckler* as "establish[ing] a presumption *against* judicial review of agency decisions that involve whether to undertake investigative or enforcement actions").

*Third*, Samuels cannot assert a free-floating Equal Protection claim against the Department here. Numerous courts have explicitly rejected the notion that plaintiffs alleging Title IX violations can bring a claim directly against the Department by including allegations of constitutional violations. *See, e.g.*, *Nat'l*

16

*Wrestling Coaches Ass'n v. Dep't of Educ.*, 383 F.3d 1047, 1048 (D.C. Cir. 2004).

And although *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388

(1971), allows a plaintiff to bring a claim against a federal officer acting under

color of law for violating the plaintiff's constitutional rights, *id.* at 397, such claims

cannot be asserted against *federal agencies*, *Meyer*, 510 U.S. at 484-86. So *Bivens*

would not allow Samuels's Equal Protection claim even if he had invoked that

decision.

### B.    Samuels's complaint does not state a claim upon which relief can be granted.

Finally, Samuels's complaint fails to state a claim. His claim appears to be

that Bryn Mawr College's admissions policy and the Department's

(non)enforcement of Title IX with respect to Bryn Mawr College's admissions

policy violate his equal-protection rights and Title IX. But that claim fails as a

matter of law.

*First*, Samuels fails to state a Title IX claim. As Bryn Mawr College rightly

explains in its motion to dismiss (ECF No. 16 at 1-3), Title IX explicitly exempts

the admission practices of private undergraduate colleges. 20 U.S.C. § 1681(a)(1)

provides that "in regard to admissions," Title IX's prohibitions on discrimination

"shall apply *only* to institutions of vocational education, professional education,

and graduate higher education, and to public institutions of undergraduate higher

education." (emphasis added). The admission practices of *private* undergraduate

17

institutions like Bryn Mawr College are thus not subject to (and cannot violate) Title IX.[13] By extension, the Department's alleged non-enforcement with respect to Bryn Mawr College's admissions policy does not violate Title IX either.[14]

*Second*, Samuels fails to state a claim based on equal-protection principles. To properly assert such a claim, Samuels must plausibly allege "intentional discrimination." *Washington v. Davis*, 426 U.S. 229, 241 (1976). That means he must "plead sufficient factual matter to show that [the Department] adopted and implemented" the allegedly discriminatory non-enforcement policy that he

---

[13] Bryn Mawr College's status as a private institution is a matter of public record and subject to judicial notice. *See Bryn Mawr College*, U.S. Dep't of Educ. Nat'l Ctr. for Educ. Stats., https://nces.ed.gov/collegenavigator/?id=211273 (last visited Jan. 11, 2024); *see also Schmidt v. Skolas*, 770 F.3d 241, 249-50 (3d Cir. 2014). It is thus properly considered in resolving a motion to dismiss. *See Schmidt*, 770 F.3d at 249-50; *Buck*, 452 F.3d at 260.

[14] In a recent filing, Samuels asserts that "organizations that have initiated the coeducation process and admitted both sexes after a 7-year period are not exempt from complying with Title IX regulations." ECF No. 26 at 2. That is wrong. Samuels appears to have misread 20 U.S.C. § 1681(a)(2), which provides a mechanism by which funding recipients whose admission practices are already subject to Title IX's discrimination prohibitions may obtain a temporary exemption. Specifically, § 1681(a)(2) provides that "in regard to admissions to educational institutions," Title IX's discrimination prohibitions "shall not apply . . . for seven years from the date an educational institution begins the process of changing from being an institution which admits only students of only one sex to being an institution which admits students of both sexes, *but only if it is carrying out a plan for such a change which is approved by the Secretary of Education*." (emphasis added). Section 1681(a)(2)'s mechanism for a limited *temporary* exemption has no bearing on the broader exemption for private undergraduate institutions in § 1681(a)(1).

complains of "not for a neutral . . . reason but for the purpose of discriminating."

*Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). Samuels's complaint does not include

any factual content that plausibly suggests intentional discrimination here. And as

just discussed, there is a far more plausible *non*-discriminatory explanation for the

Department's non-enforcement—namely Title IX's explicit carve-out for Bryn

Mawr College's admissions practices.[15]

## CONCLUSION

The Court should thus dismiss Samuels's complaint under Federal Rule of

Civil Procedure 12(b)(1) based on lack of subject-matter jurisdiction.

Alternatively, Samuels's complaint should be dismissed with prejudice under

Federal Rule of Civil Procedure 12(b)(6) based on failure to state a claim.

Dated:  January 12, 2024                    Respectfully submitted,

                                            JACQUELINE C. ROMERO
                                            United States Attorney

---

[15]  Samuels's equal-protection claim against Bryn Mawr College fails as well.
Bryn Mawr College is a private entity, meaning it presumptively cannot commit a
constitutional violation. *See, e.g.*, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936
(1982) ("most rights secured by the Constitution are protected only against
infringement by governments"); *Burton v. Wilmington Parking Auth.*, 365 U.S.
715, 722 (1961) (absent governmental involvement, "private conduct abridging
individual rights does no violence to the Equal Protection Clause"). And as the
College notes in its motion to dismiss (at 4-5), Samuels has not alleged any
plausible basis to conclude that it qualifies as a state actor.

*/s/ Susan R. Becker for GBD*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

*/s/ Gregory B. in den Berken*
GREGORY B. IN DEN BERKEN
Assistant United States Attorney
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Phone:   (215) 861-8505
Email:   gregory.indenberken@usdoj.gov

20

## CERTIFICATE OF SERVICE

I certify that on this 12th day of January 2024, a true and correct copy of Defendant United States Department of Education's Motion to Dismiss was filed electronically via the Court's CM/ECF system and served via CM/ECF on all counsel of record. I further certify that a true and correct copy was served on Plaintiff Justin Samuels via mail sent to the following address:

Rua 19, n•13, Parque Industrial da Quimigal-Barreiro
2830-138 Barreiro
Portugal

And a copy was served on him via email sent to nywriter55@outlook.com. *See* ECF No. 24.

/s/ Gregory B. in den Berken
GREGORY B. IN DEN BERKEN