**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JUSTIN SAMUELS, | : | |
|    Plaintiff, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 23-CV-3743** |
| | : | |
| BRYN MAWR COLLEGE, *et al.*, | : | |
|    Defendants. | : | |

## ORDER

*Pro se* Plaintiff Justin Samuels brings this discrimination suit against Defendants Bryn Mawr College and the Department of Education, seeking a declaration that Bryn Mawr must admit members of both sexes, all gender identities, and all sexual orientations, and that the Department of Education must "stop sexual orientation and gender identity discrimination across the board" and "end [] any Title IX exemptions." (Doc. No. 2.)  Bryn Mawr and the Department of Education move to dismiss the Complaint, which I will grant because Samuels lacks standing.  (Doc. Nos. 16, 31.)

## I.    FACTUAL ALLEGATIONS

Bryn Mawr College is women's liberal arts college.  Samuels alleges that the Department grants Bryn Mawr "an exemption to be single sex." (Doc. No. 2.)  He also alleges that single sex exemptions were "not intended to make women's colleges into lgbtq colleges that discriminate against gay men." (Id.)

In October 2022, Samuels—a gay man who currently resides in Portugal—emailed Bryn Mawr to ask if he could attend the school: "[o]ut of curiosity, can a gay man who [is] gender conforming like myself attend Bryn Mawr College for an undergraduate degree?  Was thinking about applying." (Compl. at 17; Doc. No 2 at 4.)  The Office of Admissions replied, stating Bryn Mawr:

> considers as eligible to apply to the undergraduate college all individuals who have identified and continue to identify as women (including cisgender and trans women), intersex individuals who do not identify as male, individuals assigned female at birth who have not taken medical or legal steps to identify as male, and individuals assigned female at birth who do not identify within the gender binary.

(Id.)  Samuels urges that this "rejection" violated the Equal Protection Clause.  (Id.)

Samuels urges that Bryn Mawr violated federal anti-discrimination laws and that the Department violated the Equal Protection Clause.  (Id.)  Samuels urges that Bryn Mawr's response "explicitly outline[s] [an] admission policy" that does not admit "straight men and masculine gay men," yet admits "individuals of various gender identities."  (Id.)  He charges that the policy violates Supreme Court rulings that "preferential treatment in university admissions, or in any government-funded program, violates the equal protection clause."  Students for Fair Admission v. Harvard Univ., 143 S.Ct. 2141 (2023); (Id.)  He alleges that Bryn Mawr receives federal funds, obligating it to adhere to federal anti-discrimination laws including Title IX.  (Id. at 16.)  He further alleges the Department selectively enforces anti-discrimination laws, allowing institutions like Bryn Mawr to "evade their responsibilities."  (Id.)  He asserts that the Department has violated the Equal Protection Clause because it "cannot protect the rights of lgbtq people while letting straight and masculine gay men be discriminated against."  (Id.)

Both Bryn Mawr and the Department move to dismiss, urging that the Complaint fails to state a claim.  (Doc. Nos. 16, 31.)  The Department further argues that Samuels lacks standing to assert his claims.  (Doc. No. 31.)  Samuels has filed responses to both Motions (See Doc. Nos. 18, 33.)  He also filed a Motion to "Address Title IX Exemption and Discrimination Practices and for Judgment (Doc. Nos. 26, 29.)

## II.    LEGAL STANDARDS

I must review the pleadings and dismiss the matter if I determine that the action fails to set forth a proper basis for this Court's subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1); 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); Group Against Smog and Pollution, Inc. v. Shenango, Inc., 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  The Plaintiff must establish federal jurisdiction.  See Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) (citing DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n.3 (2006)).

When assessing standing on the basis of the facts alleged in a complaint, I apply the same standard of review used when assessing a motion to dismiss for failure to state a claim.  Finkelman v. Nat'l Football League, 810 F.3d 187, 194 (3d Cir. 2016) (citing In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012).  I must thus accept factual allegations, and disregard legal conclusions or mere recitations of the elements.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  I must then determine whether the facts alleged make out a "plausible" claim.  Id. at 210.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  I must "read a *pro se* plaintiff's allegations liberally and apply a less stringent standard to the pleadings of a *pro se* plaintiff than to a Complaint drafted by counsel."  Perlberger v. Caplan & Luber, LLP, 152 F. Supp. 2d 650, 653 (E.D. Pa. 2001) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  "Yet even in the case of pro se litigants this leniency does not give a court license to serve as a de facto counsel for a party,

3

or to rewrite an otherwise deficient pleading in order to sustain an action." Pricharda v. Street, No. 22-3061, 2022 WL 4856225, at *2 (E.D. Pa. Oct. 3, 2022).

## III.    DISCUSSION

The Department urges that Samuels lacks standing because he never actually applied to Bryn Mawr, and thus, "his injury is wholly speculative." (Doc. No. 31 at 14.) Samuels responds that he has standing because he is a taxpayer who is "compelled to contribute financially to programs that systematically exclude individuals based on their sex, which directly infringes upon [his] rights and interests as a citizen." (Doc. No. 35.)

To make out standing, a plaintiff must first have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotations omitted). Second, there must be a "causal connection between the injury and the conduct complained of" such that the injury is fairly traceable to the defendant's conduct. Id. Third, it must be likely that the plaintiff's injury will be redressed by a favorable decision. Id. at 561.

Failure to allege the injury-in-fact element of the of Article III standing "is often determinative." Toll Bros., Inc. v. Township of Readington, 555 F.3d, 131, 137-38 & n.4 (3d Cir. 2009) (quoting Lujan, 504 U.S. at 560). "[I]f the injury [a plaintiff] claim[s] . . . depends on a harm that may never happen, then [he] lack[s] an injury for which [he] may seek relief from a federal court." Bognet v. Sec'y Commonwealth of Pennsylvania, 980 F.3d 336, 348 (3d Cir. 2020). Plaintiffs thus do not have standing to sue for "broad, programmatic changes untethered to a concrete case or controversy." Comite de Apoyo A Los Trabajadores Agricolas v. Perez, 46 F. Supp. 3d 550, 560 (E.D. Pa. 2014).

A student has standing to challenge an allegedly discriminatory admissions practice only when he is "able and ready" to apply.  Gratz v. Bollinger, 539 U.S. 244, 262 (2003); Carroll v. Nakatani, 342 F.3d 934, 942 (9th Cir. 2003) (applying *Gratz* to require "a legitimate intention to apply").

Samuels does not allege he actually applied for admission to Bryn Mawr and was rejected because he is not a cis-gender female or transgender female.  Nor does he suggest a legitimate intention to apply in the future.  Rather, he alleges only that he asked in an email "[o]ut of curiosity," can a gender-conforming gay man "attend Bryn Mawr College for an undergraduate degree?  Was thinking about applying." (Doc. No. 2 at 17.)

Because (1) his alleged injury is no more than a chain of possibilities and speculation about whether he could be admitted to Bryn Mawr, and (2) Samuels concedes that he brings this case to seek broad, programmatic changes to "end the discrimination against cisgendered men in colleges and take a stand against gender ideology," he fails to assert an injury that is concrete and particularized, actual or imminent, and not conjectural or hypothetical.  (See Doc. No. 2 at 17.)

In his response to the dismissal Motions, Samuels also contends that he has standing "[a]s a taxpayer." (Doc. No. 35.)  He does not.  "The Supreme Court has roundly rejected federal taxpayer standing noting that a federal taxpayer's interest 'in seeing that Treasury funds are spent in accordance with the Constitution does not give rise to the kind of redressable personal injury required for Article III standing." Nichols v. City of Rehobeth Beach, 836 F.3d 275, 280 (3d Cir. 2016) (quoting Hein v. Freedom From Religion Found., Inc., 551 U.S. 587, 597-98 (2007)).  To establish taxpayer standing, a plaintiff must show a "logical nexus between the (taxpayer) status asserted and the claim sought to be adjudicated." Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 225 n.15 (1974) (citing Flast v. Cohen, 392 U.S. 83, 102 (1968)).  As Samuels

does not attack a Congressional enactment in his capacity as a taxpayer, but rather challenges an action of the Executive Branch and a college, he has not demonstrated a "logical nexus."  See id. Accordingly, Samuels cannot maintain this action in his capacity as a federal taxpayer.

Alternatively, to the extent Samuels is attempting to address general grievances about sex-based admissions policies and the Department of Education's involvement with them, he has also not stated a case or controversy over which this Court has jurisdiction.  See Lance v. Coffman, 549 U.S. 437, 439 (2007) (per curiam) ("[A] plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen' s interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy." (quotations omitted)). Accordingly, Samuels has not established his standing to bring his claims against Bryn Mawr and the Department of Education.

Consequently, Samuels lacks standing because his claims against Bryn Mawr and the Department of Education are untethered to a concrete case or controversy and, therefore, the Court has no basis for jurisdiction over his claims.

## IV.    CONCLUSION

Because Samuels lacks standing, his Complaint will be dismissed without prejudice.  See Cottrell v. Alcon Laboratories, 874 F.3d 154, 164 n.7 (3d Cir. 2017) ("dismissals with prejudice for lack of standing are generally improper.").

6

\*    \*    \*

**AND NOW**, this 28th day of February, 2024, upon consideration of Plaintiff's Complaint (Doc. No. 2); Bryn Mawr College's Motion to Dismiss (Doc. No. 16), the Department of Education's Motion to Dismiss (Doc. No. 31), Samuel's Responses thereto, (Doc. Nos. 25, 33, 35), and Samuel's additional related submissions (Doc. Nos. 26, 29), it is it is **ORDERED** as follows:

1.    The Motion to Dismiss for Lack of Jurisdiction filed by Defendant United States Department of Education (Doc. No. 31) is **GRANTED**;

2.    Samuels' Complaint (Doc. No. 2) is **DISMISSED WITHOUT PREJUDICE.** Samuels may file an Amended Complaint **no later than** **March 9, 2024**.  Failure to do so will result in dismissal **with prejudice** of his Complaint.

3.    The Motion to Dismiss filed by Defendant Bryn Mawr College (Doc. No. 16) is **DENIED AS MOOT**.

4.    Samuels's Motions to "Address Title IX Exemption and Discrimination Practices" (Doc. No. 26), and for Judgement (Doc. No. 29) are **DENIED**.

5.    The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**AND IT IS SO ORDERED:**

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.

7